**ORDERED.**

**Dated: July 24, 2026**

Tiffany P. Geyer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 Case |
| PREMIUM EDGE, LLC,[1] | Case No. 6:26-bk-04017-TPG |
| Debtor. | |

**ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTOR TO ENTER INTO A STALKING HORSE AGREEMENT, (V) APPROVING BID PROTECTIONS, (VI) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VII) GRANTING RELATED RELIEF**

**THIS CASE** came before the Court for consideration on July 22, 2026 at 3:00 p.m., upon the hearing (the "**Hearing**") to consider the *Motion of Debtor for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtor's Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtor to Enter Into a Stalking Horse Agreement,*

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

*(E) Approving Bid Protections, (F) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (G) Granting Related Relief; and (II) an Order (A) Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 83] (the "**Motion**")[1] filed by Premium Edge, LLC (the "**Debtor**") for entry of an order (this "**Order**") (i) authorizing and approving the Bid Procedures attached hereto as Exhibit 1 (the "**Bid Procedures**") in connection with the sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Assets**"), (ii) scheduling an auction and hearing to consider the Sale of the Assets, (iii) approving the form and manner of notice thereof, (iv) authorizing, but not directing, the Debtor to enter into a Stalking Horse Agreement (as defined below), (v) approving the Bid Protections (as defined below) in connection therewith, (vi) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (collectively, the "**Contracts**"), and (vii) granting related relief, all as further described in the Motion. The Court, having considered the Motion and the First Day Declaration, finding that (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and (c) the Court may issue a final order consistent with Article III of the United States Constitution; (d) venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (e) the relief requested in the Motion is in the best interests of the Debtor's estate, creditors, and other parties in interest; and (f) the legal and factual bases set forth in the Motion, the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or First Day Declaration, as applicable.

upon the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor. Accordingly, it is

**ORDERED** as follows:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor has confirmed its consent to the entry of a final order by this Court in connection with the Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, and 6004-1.

F. Notice of the Motion has been given to: (a) the United States Trustee by electronic mail as required by Local Rule 2081-1(g); and by mail to (b) the holders of the twenty (20) largest unsecured claims against the Debtor; (c) UMB Bank, N.A., as Trustee, and counsel thereto; (d) the United States Attorney's Office for the Middle District of Florida; (e) the Internal Revenue Service; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local

Rule 2002-1(f).

G. Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H. The Debtor has articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts, (v) authorize the Debtor to enter into a Stalking Horse Agreement, and (vi) extend to a Stalking Horse Purchaser the Bid Protections, in the exercise of its reasonable business judgment. The entry of this Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

I. The Bid Procedures attached hereto as Exhibit 1 are reasonable, appropriate and represent the best method for maximizing value for the benefit of the Debtor, its estate, and its creditors. The Bid Procedures were negotiated at arm's length, in good faith, and without collusion. The Bid Procedures balance the Debtor's interests in emerging expeditiously from the Chapter 11 Case while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtor, its estate, its creditors, and other parties in interest. The Bid Procedures comply with the requirements of Local Rule 6004-1.

J. The Debtor has demonstrated compelling and sound business justifications for authorization to enter into a Stalking Horse Agreement pursuant to the terms of the Bid Procedures.

K. The notices, substantially in the form attached hereto as Exhibit 2 (the "**Non-Resident Sale Notice**") and Exhibit 3 (the "**Resident Sale Notice**"), provided by the Debtor regarding the Sale of the Assets by Auction and Sale Hearing, are reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the assets for sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, if any, (vi) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, and (vii) notice of the proposed assumption and assignment of Assigned Contracts to the Stalking Horse Purchaser, if any (or such other Contracts to another Successful Bidder [as defined in the Bid Procedures] arising from the Auction, if any) and the right, procedures, and deadlines for objecting thereto. No other or further notice of the Sale shall be required.

L. The Motion, this Order, and the Assignment Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtor and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of its Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

M. Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtor in accordance therewith shall constitute a sale of the Assets, which sale will only take

place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

**I. The Bid Procedures**

3. The Bid Procedures, attached hereto as Exhibit 1, are hereby approved in their entirety and fully incorporated into this Order. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit a higher or better offer for the Assets must comply with the terms of the Bid Procedures and this Order. The Bid Procedures shall also govern the terms on which the Debtor, in consultation with counsel to the Bond Trustee and counsel to the Creditors' Committee, if one is appointed (together, the "Consultation Parties"), will proceed with the Auction and/or Sale.[2]

4. The Debtor shall, or shall cause Blueprint to, provide the Consultation Parties with weekly marketing reports concerning the Sale process which reports shall include, without limitation, a then-current list of Contact Parties, a list of which Contact Parties have signed Confidentiality Agreements and received Diligence Materials and/or accessed the Data Room, reports of Data Room activity by Potential Interested Parties, copies of all indications of interest,

[2] To the extent that the Bond Trustee submits a Bid, including a credit bid (a "Credit Bid") for any Assets or indicates its intention to submit a Bid, the Bond Trustee shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for such Assets included in the Bond Trustee's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in the Bid Procedures and the Bid Procedures Order.

Stalking Horse Agreements, and Asset Purchase Agreements for the Assets, and all other materials related to the Auction and/or Sale as the Consultation Parties reasonably request. Further, the Debtor shall cause representatives of Blueprint to participate in weekly conference calls with the Consultation Parties to discuss the Sale process.

5. The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

| |
|---|
| (All times are prevailing Eastern Time) |
| **July 24, 2026:** Debtor to send Cure Notices to Non-Resident Contract Counterparties and Notice of the Sale to Non-Residents |
| **August 3, 2026 at 4:00 p.m.:** Non-Resident Cure or Assignment Objection Deadline |
| **August 24, 2026 at 5:00 p.m.**: Deadline for any party interested in serving as a Stalking Horse Purchaser to submit a Stalking Horse Agreement |
| **September 1, 2026 at 4:00 p.m.:** Debtor's deadline to designate a Stalking Horse Purchaser, if any, and enter into a Stalking Horse Agreement |
| **Seven (7) Days after the filing of the Stalking Horse Notice**: Deadline for any party in interest to object to the Stalking Horse Notice |
| **October 1, 2026:** Debtor to send Notice of the Sale to Residents |
| **October 6, 2026 at 5:00 p.m.:** Deadline to submit Bids to be considered for the Auction |
| **October 13, 2026:** Advise bidders of any Qualified Bids |
| **October 15, 2026 at 10:00 a.m.:** Auction (if necessary) |
| **October 19, 2026 at 4:00 p.m.:** Sale Objection Deadline |
| **October 19, 2026**: Debtor to send Cure Notices to Resident Contract Counterparties |
| **Within 24 hours of completed auction:** Debtor to file notice of Successful Bidder |
| **October 22, 2026 at 1:15 p.m.** (subject to Court availability)**:** Sale Hearing |

| |
|---|
| **November 9, 2026 at 4:00 p.m.:** Resident Cure or Assignment Objection Deadline |

## II. Entry into Stalking Horse Agreement

6. As described in the Bid Procedures, the deadline for interested parties to submit a Stalking Horse Agreement is **August 24, 2026 at 5:00 p.m. (prevailing Eastern Time)**. Subject to the procedures set forth in paragraph 7 below, in the event that the Debtor, after consulting with the Consultation Parties, enters into a Stalking Horse Agreement on or prior to **September 1, 2026** (the "**Stalking Horse Deadline**") that satisfies the following conditions, (a) the Break-Up Fee does not exceed two and a half percent (2.5%) of the cash purchase price; and (b) the Stalking Horse Expense Reimbursement does not exceed $250,000 (*provided, however*, that if, at the conclusion of the stalking horse bidder stage, the Debtor has not received any stalking horse bid that provides for aggregate consideration sufficient to satisfy the outstanding obligations under the Bond Documents in full, the Bond Trustee may require that the Debtor select a Stalking Horse Purchaser and must consent to any Bid Protections to be offered to such Stalking Horse Purchaser, and the Debtor shall not select a Stalking Horse Purchaser at a price less than the amount needed to pay the Bond claim in full without the Bond Trustee's consent), the Debtor will file with the Court a notice (a "**Stalking Horse Notice**"), no later than two (2) business days following the Stalking Horse Deadline that shall include the following: (a) the identification of the Stalking Horse Purchaser; (b) a copy of the Stalking Horse Agreement; (c) the purchase price provided for in the Stalking Horse Agreement (the "**Stalking Horse Purchase Price**"); (d) the deposit paid by the Stalking Horse Purchaser; and (e) any proposed Bid Protections. The Debtor shall serve the Stalking Horse Notice on (i) counsel to the Bond Trustee, (ii) counsel to any official committee appointed in this Chapter 11 Case, (iii) all parties who have expressed a written interest in the Assets, and (iv) the United States Trustee for the Middle District of Florida.

7. Following the filing of the Stalking Horse Notice, any party in interest shall have seven (7) days to file an objection (the "**Stalking Horse Objection**") to the designation of the proposed Stalking Horse or the Bid Protections afforded to the same. If no such Stalking Horse Objection is filed, the designation shall become final and the proposed Bid Protections, if any, shall be deemed approved. If a Designation Objection is filed, the Debtor shall contact the Court and request a hearing date to resolve the Stalking Horse Objection. The Court reserves the right to consider whether any break-up fee or expense reimbursement provision ultimately set forth in a Stalking Horse Agreement is reasonable, necessary and appropriate, including requiring the presentation of evidence.

## III. The Auction

8. As further described in the Bid Procedures, if more than one Qualified Bid is received by the Bid Deadline (including any Stalking Horse Bid), the Debtor will conduct the Auction at **10:00 a.m. (prevailing Eastern Time) on October 15, 2026.** The Auction will be held either virtually or at such physical location as identified by the Debtor after notice to all Qualified Bidders. The Auction may also be held on such other later date or time or at such other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received. The Debtor is authorized, in consultation with the Consultation Parties and subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

9. If the Debtor does not receive more than one Qualified Bid (including any Stalking Horse Bid), after consulting with the Consultation Parties: (i) the Debtor may cancel the Auction, (ii) the Stalking Horse Bid, if any, or other Qualified Bid may be deemed by the Debtor to be the Successful Bid for the Assets, and (iii) the Debtor shall be authorized to seek approval of such bid as the Successful Bid at the Sale Hearing.

10. Only Qualified Bidders (including, for the avoidance of doubt, any Stalking Horse Purchaser) will be entitled to make any Bids at the Auction.

11. The Debtor and its professionals shall direct and preside over the Auction, shall consult with the Consultation Parties concerning the conduct of the auction, and the Auction shall be transcribed or videotaped.

12. Each Qualified Bidder (including, for the avoidance of doubt, any Stalking Horse Purchaser) participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

13. The Debtor may, in consultation with the Consultation Parties, (i) determine which Qualified Bid (including any Stalking Horse Bid) is the highest or otherwise best offer; (ii) reject at any time before the entry of the Sale Order any Bid (other than the Stalking Horse Bid) that, in the discretion of the Debtor after consulting with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bid Procedures, or (c) contrary to the best interest of the Debtor, its estate, its creditors, interest holders, or other parties in interest; and (iii) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualified Bidders as the Debtor determines, in consultation with the Consultation Parties, to be in the best interest of the Debtor's estate.

14. No person or entity, other than a Stalking Horse Purchaser, if any, shall be entitled

to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**IV. Assumption and Assignment Notices & Procedures**

15. The procedures set forth below regarding the assumption and assignment of the executory contracts and unexpired contracts proposed to be assumed by the Debtor pursuant to Bankruptcy Code section 365(b) and assigned to the Successful Bidder, if any, pursuant to Bankruptcy Code section 365(f) in connection with the Sale (the "**Assignment Procedures**") are hereby approved to the extent set forth herein. These Assignment Procedures shall govern the assumption and assignment of all of the Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Contracts.

**A. Non-Resident Contracts**

16. On or prior to **July 24, 2026**, the Debtor shall serve on all non-Debtor counterparties who are not a resident (a "**Resident**") at the Facility (each a "**Non-Resident Contract Counterparty**" and, collectively, the "**Non-Resident Contract Counterparties**") to any non-Resident Contract relating to the Assets (the "**Non-Resident Cure Notice Parties**") that may be assumed by the Debtor and assigned to the Successful Bidder after the results of the Auction, if necessary, which notice shall be substantially in the form attached hereto as Exhibit 4 (a "**Non-Resident Cure Notice**"). The Non-Resident Cure Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtor's good

faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Non-Resident Contract Objection Deadline (as defined below). The presence of a Contract on the Non-Resident Cure Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

**B. Resident Contracts**

17. On or prior to **October 19, 2026**, the Debtor shall serve on all non-Debtor Resident counterparties (each a "**Resident Contract Counterparty**" and, collectively, the "**Resident Contract Counterparties**") to any Resident Contract relating to the Assets (the "**Resident Cure Notice Parties**") that may be assumed by the Debtor and assigned to the Successful Bidder after the results of the Auction, if necessary, which notice shall be substantially in the form attached hereto as Exhibit 5 (a "**Resident Cure Notice**" and together with the Non-Resident Cure Notice, the "**Cure Notices**"). The Resident Cure Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtor's good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, and (iv) the Resident Contract Objection Deadline (as defined below). The presence of a Contract on the Resident Cure Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor from subsequently withdrawing such request for assumption or rejecting such

Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

**C. Supplemental Assumption Notices**

18. Although the Debtor intends to make a good faith effort to identify all Contracts that may be assumed and assigned in connection with a Sale, the Debtor may discover certain executory contracts and unexpired leases inadvertently omitted from the list of Contracts, or Successful Bidders may identity other executory contracts and/or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtor reserves the right, but only in accordance with any Stalking Horse Agreement, or as otherwise agreed to by the Debtor and the Successful Bidder, and before the closing of a Sale, to (i) supplement the list of Contracts with previously omitted executory contracts, (ii) remove Contracts from the list of executory contracts and unexpired leases ultimately selected as Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Contract. In the event the Debtor exercises any of these reserved rights, the Debtor will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Contracts and their counsel of record, if any; *provided*, *however*, the Debtor may not add an executory contract to the list of Contracts that has been previously rejected by the Debtor by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Contracts as was included in the applicable Cure Notice.

**D. Cure Objection Deadlines**

19. Objections, if any, to the cure amount set forth on the Cure Notices, the possible assignment of the applicable counterparty's executory contract or unexpired lease, or the proposed



120231007.1

form of adequate assurance of future performance with respect to such contract or lease (each, a "**Contract Objection**") **must** (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before: (i) **August 3, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the **"Non-Resident Contract Objection Deadline**") with respect to Non-Resident Contracts and **November 9, 2026 at 4:00 p.m. (prevailing Eastern Time)** (the "**Resident Contract Objection Deadline**") with respect to Resident Contracts: (a) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com); (b) counsel for the Stalking Horse Purchaser, if any, (c) counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); (d) counsel for the Creditors' Committee, if one is appointed, (e) the Office of the United States Trustee for Region 21 (Orlando Office), 400 West Washington Street, Suite 1100, Orlando, FL 32801, Attn: William Simonitsch (William.J.Simonitsch@usdoj.gov) (collectively, the "**Notice Parties**"). If a Successful Bidder that is not the Stalking Horse Purchaser prevails at the Auction, then the Non-Resident Contract Objection Deadline, solely with respect to objections to the adequate assurance of future performance shall be extended to the date that is two (2) business days after the

conclusion of the Auction, but any such objection must be received before the start of the Sale Hearing, *provided*, *however*, that the deadline to object to the proposed cure amount shall not be so extended and *provided further* that the Resident Contract Objection Deadline shall not be affected.

20. If a Resident or Non-Resident Contract Counterparty does not timely file and serve a Resident or Non-Resident Contract Objection, that party will be forever barred from objecting to (i) the Debtor's proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), and (iii) the related relief requested in the Motion. Such party shall be forever barred and estopped from objecting to the cure amount, claiming any other monetary or non-monetary default then exists under the Contract, objecting to the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, a Stalking Horse Purchaser or the Successful Bidder, as applicable, for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtor and the Stalking Horse Purchaser or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease.

21. Where a Resident or Non-Resident Contract Counterparty to an Assigned Contract files a timely Resident or Non-Resident Contract Objection asserting a higher cure amount than the amount listed in the Resident or Non-Resident Cure Notice, or objecting to the possible assignment of that Resident or Non-Resident Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to

assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing.

22. The payment of the applicable cure amount by the Debtor or Stalking Horse Purchaser (or other Successful Bidder), as applicable, shall (i) effect a cure of all monetary and non-monetary defaults then existing under the Assigned Contract and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**V. Notice of the Sale Process**

23. The Non-Resident Sale Notice, Resident Sale Notice, Non-Resident Cure Notice, and Resident Cure Notice, in substantially the forms as annexed to this Order as Exhibit 2, Exhibit 3, Exhibit 4, and Exhibit 5, respectively, are hereby approved.

24. Within two (2) business days after the entry of this Order, the Debtor (or its agent) shall serve the Non-Resident Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b) the Bond Trustee and its counsel; (c) the holders of the twenty (20) largest unsecured claims against the Debtor; (d) all parties who have expressed a written interest in the Assets; (e) the United States Attorney's Office for the Middle District of Florida; (f) the Internal Revenue Service; (g) all state and local taxing authorities with an interest in the Assets; (h) the Attorney General for the State of Florida; (i) the Securities and Exchange Commission; (j) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (k) all parties known or reasonably believed to have asserted an Interest in the Assets; (l) the Non-Resident Contract Counterparties; (m) the Debtor's insurance carriers; and (n) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

25. On October 1, 2026, the Debtor (or its agent) shall serve the Resident Sale Notice by first-class mail upon the Resident Contract Counterparties.

## VI. The Sale Hearing

26. The Sale Hearing will be conducted on **October 22, 2026 at 1:15 p.m. (prevailing Eastern Time),** subject to Court availability. The Debtor will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Assets to the Successful Bidder. Upon entry of this Order, the Debtor is authorized to perform any obligation intended to be performed prior to the Sale Hearing or entry of the Sale Order with respect thereto. The Sale Hearing may be adjourned from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

## VII. Objections to the Sale

27. Objections, if any, to the relief requested in the Motion relating to the Sale of Assets to the Successful Bidder (each, a "**Sale Objection**") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on October 19, 2026** by the Notice Parties.

28. A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code section 363(f), and shall be deemed to be a "consent" for purposes of Bankruptcy Code section 363(f).

## VIII. Other Relief Granted

29. Nothing in this Order, any Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

30. The Debtor is hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

31. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

32. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

33. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # #

*(Attorney Michael L. Schuster is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order).*

**<u>Exhibit 1 to Bid Procedures Order</u>**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>PREMIUM EDGE, LLC,[1]<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 6:26-bk-04017-TPG |

**BID PROCEDURES**

On May 29, 2026, Premium Edge, LLC (the "**Debtor**"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is operating its business and managing its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

On [●], 2026, the United States Bankruptcy Court for the Middle District of Florida (the "**Court**") entered an order [Docket No. ●] (the "**Bid Procedures Order**"), which, among other things, authorized the Debtor to solicit bids and approved these procedures (collectively, the "**Bid Procedures**") to be employed by the Debtor in connection with a sale of substantially all of the Debtor's assets (the "**Assets**").

These Bid Procedures set forth the process by which the Debtor is authorized to conduct the auction (the "**Auction**") for the sale (the "**Sale**") of the Assets. Subject to the entry of the Sale Order, the Sale may be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, if any, subject to the receipt of higher or otherwise better Bids (as defined below) in accordance with these Bid Procedures. Pursuant to the Bid Procedures, the Debtor will determine, the highest or otherwise best price for the sale of the Assets.

**A. Important Dates**

(All times are prevailing Eastern Time)

**July 24, 2026:** Debtor to send Cure Notices to All Contract Counterparties and Notice of the Sale

**August 3, 2026 at 4:00 p.m.:** Cure or Assignment Objection Deadline

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

**August 24, 2026 at 5:00 p.m.**: Deadline for any party interested in serving as a Stalking Horse Purchaser to submit a Stalking Horse Agreement

**September 1, 2026 at 4:00 p.m.:** Debtor's deadline to designate a Stalking Horse Purchaser, if any, and enter into a Stalking Horse Agreement

**Seven (7) Days after the filing of the Stalking Horse Notice**: Deadline for any party in interest to object to the Stalking Horse Notice

**October 1, 2026:** Debtor to send Notice of the Sale to Residents

**October 6, 2026 at 5:00 p.m.:** Deadline to submit Bids to be considered for the Auction

**October 13, 2026:** Advise bidders of any Qualified Bids

**October 15, 2026 at 10:00 a.m.:** Auction (if necessary)

**October 19, 2026 at 4:00 p.m.:** Sale Objection Deadline

**October 19, 2026**: Debtor to send Cure Notices to Resident Contract Counterparties

**Within 24 hours of completed auction:** Debtor to file notice of Successful Bidder and Contract Assignment Notices
**October 22, 2026 at 1:15 p.m.** (subject to Court availability)**:** Sale Hearing

**November 9, 2026 at 4:00 p.m.**: Resident Cure or Assignment Objection Deadline

## B. Marketing Process

### I. Contact Parties

The Debtor and its advisors have developed a list of parties who the Debtor believes may potentially be interested in and who the Debtor reasonably believes would have the financial resources to consummate a Sale, which list includes both potential strategic and financial investors (each, individually, a "**Contact Party**", and collectively, the "**Contact Parties**"). The Debtor's broker, Blueprint Healthcare Real Estate Advisors, LLC, has contacted or will contact the Contact Parties to explore their interest in pursuing a Sale. The Contact Parties may include parties whom the Debtor or their advisors have previously contacted regarding a Sale, regardless of whether such parties expressed any interest, at such time, in pursuing a Sale. A copy of the list of Contact Parties has been provided to the Consultation Parties, and Blueprint shall provide to the Consultation Parties an updated list to the extent that additional Contact Parties are added. The Debtor will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate, and as reasonably requested by the Consultation Parties.

The Debtor may distribute to each Contact Party an "**Information Package**," which is comprised of:

(1) a cover letter;

(2) a copy of these Bid Procedures;

(3) a copy of a confidentiality agreement in a form acceptable to the Debtor (the "**Confidentiality Agreement**"); and

(4) a copy of the Form Purchase Agreement or Stalking Horse Agreement (as applicable).

## II. Access to Diligence Materials

To participate in the bidding process and to receive access to any materials relating to the Assets (the "**Diligence Materials**"), a party must submit to the Debtor an executed Confidentiality Agreement. The executed Confidentiality Agreement must be signed and transmitted by the person or entity wishing to have access to the Debtor's data room (the "**Data Room**") and any other Diligence Materials.

A party who qualifies for access to the Diligence Materials shall be a "**Preliminarily Interested Investor**." All due diligence requests must be directed to counsel to the Debtor. The Debtor shall notify the Consultation Parties of all Preliminary Interested Investors, and shall provide the Consultation Parties with weekly updates concerning the activity levels and diligence of the Preliminary Interested Investors as provided in the Bid Procedures Order.

For any Preliminary Interested Investor who is a competitor of the Debtor or is affiliated with any competitor of the Debtor, the Debtor reserves the right, after consulting with the Consultation Parties, to withhold any Diligence Materials that the Debtor determines are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

## III. Stalking Horse Deadline and Requirements

Any party interested in serving as a Stalking Horse Purchaser must submit a Stalking Horse Agreement for the Assets so that it is actually received by the following parties no later than **August 24, 2026 at 5:00 p.m.** (prevailing Eastern Time): proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com). The Debtor shall share copies of all Stalking Horse Agreements received with the Consultation Parties.

Each Stalking Horse Agreement must satisfy the Bid requirements and set forth the requested Bid Protections. The Debtor, in consultation with the Consultation Parties, may request additional information, including to assess the bidder's financial capability and ability to close, before making a determination as to whether to designate a Stalking Horse Purchaser. Submission of a Stalking Horse Agreement does not constitute a Qualified Bid or entitle the submitter to participate in the Auction unless all requirements set forth in these Bid Procedures are satisfied.

## IV. Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be determined by the Debtor, in consultation with the Consultation Parties, to satisfy each of the following conditions:

(1) **Good Faith Offer; Partial Bids:** Each Bid must constitute a good faith, bona fide offer to purchase all or a portion of the Assets.

(2) **Good Faith Deposit:** Each Bid must be accompanied by a deposit in the amount of three percent (3%) of the Bid's proposed cash purchase price to an interest bearing escrow account to be identified and established by the Debtor (the "**Good Faith Deposit**").

(3) **Terms:** A Bid must be on terms that are substantially the same or better than the terms of the Stalking Horse Agreement, if applicable.

(4) **Executed Agreement**: To be deemed a "**Qualified Bid**", a Bid must be (i) if a Stalking Horse Purchaser has been designated for the Assets, substantially the same terms as, or terms more favorable to the Debtor and its estate than, the terms set forth in a Stalking Horse Agreement, if applicable and include a redline marked against the Stalking Horse Agreement; and (ii) otherwise, in the form of the Purchase Agreement included in the Data Room (the "**Form Purchase Agreement**") and include a redline marked against the Form Purchase Agreement. A Bid, other than the bid of the Stalking Horse Purchaser, if any, will not be considered qualified for the Auction if (i) such Bid is not received by the Debtor in writing on or prior to the Bid Deadline (it being agreed and understood such Bid shall modify the Stalking Horse Agreement as needed to comply in all respects with the Bid Procedures Order and will remove provisions that apply only to the Stalking Horse Purchaser such as the Bid Protections) (a "**Modified Purchase Agreement**"), and (ii) such Bid does not contain reasonably satisfactory evidence that the Person submitting it has the financial wherewithal to close the transaction, including proof the Good Faith Deposit has been made.

(5) **Designation of Contracts and Leases**: A Bid must identify any and all executory contracts and unexpired leases of the Debtor that the Bidder wishes to be assumed pursuant to a Sale. A Bid must specify whether the Debtor or the Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate shall be provided by the Debtor).

(6) **Designation of Assumed Liabilities**: A Bid must identify all liabilities which the Bidder proposes to assume.

(7) **Amount of Bid:** Each Bid or combination of Bids must clearly show the amount of the purchase price. In the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualified Bidder must equal or exceed the sum of the amount of (i) the purchase price under the Stalking Horse Agreement, (ii) any Break-Up Fee, (C) any Expense Reimbursement, and (D) $100,000 (the "**Initial Overbid**").

(8) **Corporate Authority:** Written evidence reasonably acceptable to the Debtor, in consultation with the Consultation Parties, demonstrating appropriate corporate authorization to consummate the proposed transaction; *provided, however*, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor, in consultation with the Consultation Parties, of the approval of the transaction by the equity holder(s) of such Bidder.

(9) **Disclosure of Identity of Potential Bidder**: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understanding with the Debtor, the Stalking Horse Purchaser, if any, or any other known, potential, or prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Debtor. Under no circumstances shall any undisclosed principals, equity holders or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtor's advisors should contact regarding such Bid.

(10) **Proof of Financial Ability to Perform:** Written evidence the Debtor, in consultation with the Consultation Parties, reasonably concludes demonstrates the Bidder has the necessary financial ability to close the transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such transaction. Such information should include, *inter alia*, the following:

(a) contact names and numbers for verification of financing sources,

(b) written evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the transaction;

(c) the Bidder's current financial statements (audited if they exist);

(d) a description of the Bidder's pro forma capital structure; and

(e) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, in consultation with the Consultation Parties, demonstrating such Bidder has the ability to close the transaction; *provided, however*, the Debtor shall determine in its reasonable discretion, in consultation with the Consultation Parties, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(11) **Regulatory and Third Party Approvals**: A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Sale, and the time

period within which the Bidder expects to receive such regulatory and third-party approvals.

(12) **Employees**: A Bid must detail the treatment of the employees of the Debtor.

(13) **Residents**: A Bid must detail the treatment of the Debtor's agreements with its residents.

(14) **Conditions/Contingencies:** A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties in the manner set forth in the Form Purchase Agreement or the Stalking Horse Agreement (as applicable).

(15) **Irrevocable:** A Bid (other than the Bid of the Stalking Horse Purchaser) must be irrevocable until two (2) business days after the Sale Hearing. Each Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Debtor, in consultation with the Consultation Parties, at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Successful Bidder's purchase agreement, as modified, if at all, and the Sale Order. The Stalking Horse Purchaser, if designated by the Debtor, shall be obligated to serve as a Backup Bidder if the Stalking Horse Purchaser is not the Successful Bidder.

(16) **Time Frame for Closing**: A Bid by a Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, in consultation with the Consultation Parties, but in no event later than 60 days after the designation of the Bidder as the Successful Bidder.

(17) **Consent to Jurisdiction:** Each Bidder must submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtor, the Bid Procedures, and the Auction.

(18) **Disclaimer of Fees:** Each Bid (other than the Stalking Horse Agreement, if any) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than a Stalking Horse Purchaser, if any) will be permitted to request, nor be granted by the Debtor, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. By submitting its Bid, each Bidder (other than the Stalking Horse Purchaser, if any) is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including pursuant to Bankruptcy Code section 503(b).

(19) **Bid Deadline:** Regardless of when a party qualifies as a Preliminarily Interested Investor, the Debtor must receive a Bid in writing, on or before **October 6, 2026 at 5:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by

the Debtor (the "**Bid Deadline**"). Bids must be sent to the following by the Bid Deadline to be considered: (i) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschsuter@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309 (Attn: David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com)), (ii) counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)), and (iii) counsel for the Creditors' Committee, if one is appointed.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "**Qualified Bid**," and such Bidder shall constitute a "**Qualified Bidder**." A designated Stalking Horse Purchaser shall be deemed to be a Qualified Bidder.

Notwithstanding anything to the contrary herein, the Bond Trustee shall be deemed to be a Qualified Bidder and may submit a Credit Bid of all or any portion of the aggregate amount of its secured claims, at any time prior to or during the Auction, and any such Credit Bid will be considered a Qualified Bid (a "**Qualified Credit Bid**"). Further, (i) no Good Faith Deposit will be required in connection with a Qualified Credit Bid and (ii) no Qualified Credit Bid will serve as the Back-Up Bid without the written consent of the Bond Trustee. No party may challenge the Bond Trustee's right to credit bid except by objecting to such right prior to the Auction, and any such challenge must be adjudicated prior to the start of the Auction.

Within two (2) days after the Bid Deadline, the Debtor and its advisors, in consultation with the Consultation Parties, will determine which Bidders are Qualified Bidders and will notify such Bidders whether Bids submitted constitute Qualified Bids so as to enable such Qualified Bidders to attend the Auction. Any Bid that is not deemed a Qualified Bid will not be considered by the Debtor. The Stalking Horse Agreement submitted by the Stalking Horse Purchaser (the "**Stalking Horse Bid**"), if any, will be deemed a Qualified Bid, qualifying the Stalking Horse Purchaser as a Qualified Bidder to participate in the Auction. To the extent there is any dispute regarding whether a bidder is a Qualified Bidder, such dispute may be raised with the Bankruptcy Court on an expedited basis prior to the commencement of the Auction.

Between the date that the Debtor notifies a Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor (which consent shall not be given without first consulting with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bid Procedures; *provided* that any such Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bid Procedures.

Prior to the Auction, the Debtor and its advisors, in consultation with the Consultation Parties, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's reasonable business judgment, the highest or otherwise best bid (the "**Starting Bid**"). For the

avoidance of doubt, the Starting Bid shall equal (or exceed) an amount equal to the value of any Stalking Horse Agreement plus the Bid Protections plus the Initial Overbid. In making such determination, the Debtor will take into account, among other things, the execution risk attendant to any submitted bids. Within twenty-four (24) hours of such determination, but in no event later than twenty-four (24) hours before the start of the Auction, the Debtor will (i) notify the Stalking Horse Purchaser, if any, as to which Qualified Bid is the Starting Bid and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

## C. Auction

If two or more Qualified Bids are received by the Bid Deadline (including the Stalking Horse Bid, if any), the Debtor will conduct the Auction, in consultation with the Consultation Parties, to determine the highest and best Qualified Bid or combination of Qualified Bids. This determination shall take into account any factors the Debtor, in consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to the estate, including, *inter alia,* the following: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities and/or executory contracts or unexpired leases, if any, and the excluded assets and/or executory contracts or unexpired leases, if any; (c) the ability of the Qualified Bidder to close the proposed Transaction and the conditions related thereto, and the timing thereof; (d) whether the Bid is a bulk bid for all of the Debtor's Assets or a partial bid for only the Assets identified in the Form Purchase Agreement; (e) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (f) any purchase price adjustments; (g) the impact of the Transaction on any actual or potential litigation; (h) the net after-tax consideration to be received by the Debtor's estate; (i) the tax consequences of such Qualified Bid; and (j) any other factors the Debtor may reasonably deem relevant (collectively, the "**Bid Assessment Criteria**").

If not more than one Qualified Bid (including any Stalking Horse Bid) is received prior to the Bid Deadline, then the Auction will not occur, the single Qualified Bid (including any Stalking Horse Agreement) may be deemed the Successful Bid, and the Debtor may pursue entry of an order by the Bankruptcy Court authorizing the Sale to the Qualified Bidder (including any Stalking Horse Purchaser) as soon as practicable.

### ***Procedures for Auction***

The Auction, if necessary, will take place on **October 15, 2026 at 10:00 a.m. (prevailing Eastern Time)** either virtually or at such physical location as identified by the Debtor after notice to all Qualified Bidders. The Auction may also be held on such other later date or time or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received. Only the Stalking Horse Purchaser, if any, and such other Qualified Bidders will be entitled to make any Bids at the Auction.

### I. The Debtor Shall Conduct the Auction

The Debtor and its professionals shall direct and preside over the Auction, shall consult with the Consultation Parties concerning the conduct of the Auction, and the Auction shall be transcribed or videotaped. At the start of the Auction the Debtor shall describe the terms of the Starting Bid and provide each participant in the Auction with a copy of the Modified Purchase

Agreement associated with the Starting Bid.

All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid and all Overbids. Upon the solicitation of each round of Overbids, the Debtor may, in consultation with the Consultation Parties, announce a deadline (as the Debtor may, in its business judgment and in consultation with the Consultation Parties, extend from time to time) by which time any Overbids must be submitted to the Debtor.

## II. Terms of Overbids

An "**Overbid**" is any Bid made at the Auction subsequent to the Debtor's announcement of the Starting Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

### (1) Minimum Overbid Increment

Any Overbid after the Starting Bid shall be made in increments of at least $100,000 (the "**Minimum Overbid Increment**"). Additional consideration in excess of the amount set forth in the Starting Bid may include cash and/or non-cash consideration (including the right of the Bond Trustee to Credit Bid any remaining amounts of its secured claim in accordance with these Bid Proecedures); *provided*, *however* that the value for such non-cash consideration shall be determined by the Debtor in its reasonable business judgment and in consultation with the Consultation Parties.

### (2) Remaining Terms Are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above; *provided, however*, the Bid Deadline shall not apply and no additional Good Faith Deposit shall be required beyond the Good Faith Deposit previously submitted by a Qualified Bidder; *provided* that the Successful Bidder shall be required to make a representation at the end of the Auction that it will provide any additional deposit necessary so that its Good Faith Deposit is equal to the amount of three percent (3%) of the cash purchase price contained in the Successful Bid. Any Overbid must include, in addition to the amount and form of consideration of the Overbid, a description of all changes (if any) requested by the Qualified Bidder to the Stalking Horse Agreement or a previously submitted Modified Purchase Agreement, in connection therewith (including any changes to the designated assigned contracts and leases and assumed liabilities). Any Overbid must remain open and binding on the Bidder until and unless the Debtor, after consulting with the Consultation Parties, accepts a higher Overbid (except to the extent required to serve as the Backup Bid).

To the extent not previously provided (which shall be determined by the Debtor in consultation with the Consultation Parties), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in consultation with the

Consultation Parties) demonstrating such Bidder's ability to close the transaction proposed by such Overbid; *provided, however*, this shall not apply to an Overbid by the Stalking Horse Purchaser.

(3) **Announcing Overbids**

The Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtor's estate based on, *inter alia,* the Bid Assessment Criteria.

(4) **Consideration of Overbids**

Subject to the deadlines set forth herein, the Debtor reserves the right, in its reasonable business judgment and in consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things, facilitate discussions between the Debtor and individual Bidders and allow individual Bidders to consider how they wish to proceed.

## III. No Collusion; Good-Faith *Bona Fide* Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction (i) it has not engaged in any collusion with respect to the Sale or bidding (including it has no agreement with any other Bidder or Qualified Bidder to control the price) and (ii) its Qualified Bid is the good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

## IV. Backup Bidder

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party(ies) with the next highest or otherwise best Qualified Bid (or combination of Qualified Bids) at the Auction, as determined by the Debtor, in the exercise of its business judgment and consultation with the Consultation Parties, shall be required to serve as backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its initial Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "**Backup Bid**") open and irrevocable until the earlier of 4:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of the Sale Hearing (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate an approved transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor, in consultation with the Consultation Parties, may designate the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the transaction with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor's estate. The closing date to consummate the transaction with the Backup Bidder shall be no later than the later of twenty five (25) days after the date the Debtor provides notice to the Backup Bidder that the Successful Bidder failed to consummate a sale and the Debtor desires to consummate the transaction with the Backup Bidder or five (5) days after necessary regulatory approvals are completed by the Backup Bidder and/or the Debtor. The deposit of the Backup Bidder shall be held by the Debtor until the earlier of two (2) business days after (a) the closing of the Sale with the Successful Bidder and (b) the Outside Backup Date; *provided*, *however*, in the

event the Successful Bidder does not consummate the transaction as described above and the Debtor provides notice to the Backup Bidder, the Backup Bidder's deposit shall be held until the closing of the transaction with the Backup Bidder. In the event the Debtor fails to consummate a transaction with the Backup Bidder as described above, the Backup Bidder's deposit shall be forfeited to the Debtor's estate. Notwithstanding anything to the contrary herein, the Stalking Horse Purchaser, if designated by the Debtor in consultation with the Consultation Parties, shall be obligated to serve as a Backup Bidder in the event that the Stalking Horse Purchaser is not selected as the Successful Bidder.

## V. Additional Procedures

The Debtor, in consultation with the Consultation Parties, may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bid Procedures or the Stalking Horse Agreement.

## VI. Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders, and all Bidders at the Auction, shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction, or the construction and enforcement of any Transaction Documents.

## VII. Closing the Auction

The Auction shall continue until there is only one Qualified Bid that the Debtor determines in its reasonable business judgment after consultation with its financial and legal advisors and the Consultation Parties, is the highest and best Qualified Bid(s) at the Auction (the "**Successful Bid**" and the Bidder(s) submitting such Successful Bid, the "**Successful Bidder**"). In making this decision, the Debtor, in consultation with its financial and legal advisors and the Consultation Parties, shall consider the Bid Assessment Criteria.

The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed Transaction Documents memorializing the terms of the Successful Bid.

If the Stalking Horse Purchaser is overbid for the Assets at the conclusion of the Auction the Stalking Horse Purchaser may, in its sole discretion, submit a higher bid for the respective Assets which exceeds that of the Successful Bidder (the "**Exceeding Bid**") at the Auction. If no Exceeding Bid is set forth by the Stalking Horse Purchaser, the Stalking Horse Agreement will be terminated, unless the Stalking Horse Purchaser is designated the Backup Bidder. The ultimate Successful Bidder will be decided at the conclusion of the Auction.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

### VIII. Break-Up Fee and Expense Reimbursements

To the extent payable in accordance with the Stalking Horse Agreement, the Break-Up Fee and Stalking Horse Expense Reimbursement shall be paid as provided in the Stalking Horse Agreement (if any) and shall constitute an allowed administrative expense claim against the Debtor's bankruptcy estate pursuant to Bankruptcy Code sections 363, 503(b), and 507(a)(2).

### IX. Procedures for Determining Cure Amounts and Adequate Assurance for Contract Counterparties to Assigned Contracts

By **July 24, 2026**, the Debtor shall send a notice to each counterparty to an executory contract or unexpired lease that is not a resident (a "**Resident**") at the Facility (each a "**Non-Resident Contract Counterparty**") setting forth the Debtor's calculation of the cure amount, if any, that would be owing to such Non-Resident Contract Counterparty if the Debtor decided to assume or assume and assign such executory contract or unexpired lease, and alerting such Non-Resident Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "**Non-Resident Cure Notice**"), a copy of which is attached to the Bid Procedures Order as Exhibit 4. By **October 19, 2026,** the Debtor shall send a notice to each Resident that is a counterparty to an executory contract or unexpired lease (each, a "**Resident Contract Counterparty**") setting forth the Debtor's calculation of the cure amount, if any, that would be owing to such Resident Contract Counterparty if the Debtor decided to assume and assign such executory contract or unexpired lease, and alerting such Resident Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "**Resident Cure Notice**"), a copy of which is attached to the Bid Procedures Order as Exhibit 5. Any Non- Resident Contract Counterparty that objects to the cure amount set forth in the Non-Resident Cure Notice, the possible assignment of its executory contract or unexpired lease, or the proposed form of adequate assurance of future performance with respect to such contract or lease, must file an objection (a "**Non-Resident Contract Objection**") on or before **4:00 p.m. prevailing Eastern Time on August 3, 2026**, and any Resident Contract Counterparty that objects to the cure amount set forth in the Resident Cure Notice, the possible assignment of its executory contract or unexpired lease, or the proposed form of adequate assurance of future performance with respect to such contract or lease, must file an objection (a "**Resident Contract Objection**") on or before **4:00 p.m. prevailing Eastern Time on November 9, 2026.** Any Resident or Non-Resident Contract Objection must be served on (a) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com); (b) counsel for the Stalking Horse Purchaser, if any; (c) counsel for the Creditors' Committee, if one is appointed; (d) the Office of the United States Trustee for Region 21 (Orlando Office), 400 West Washington Street, Suite 1100, Orlando, FL 32801, Attn: William Simonitsch (William.J.Simonitsch@usdoj.gov); (e) counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris,

Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); and (f) the Clerk of the Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 (collectively, the "**Notice Parties**"). If a Resident or Non-Resident Contract Counterparty does not timely file and serve a Resident or Non-Resident Contract Objection, as applicable, that party will be forever barred from objecting to (a) the Debtor's proposed cure amount, or (b) the assignment of that party's executory contract or unexpired lease to the Successful Bidder. Where a Resident or Non-Resident Contract Counterparty to an Assigned Contract files a timely Resident or Non-Resident Contract Objection asserting a higher cure amount than the amount listed in the Resident or Non-Resident Cure Notice, or an objection to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined either at the Sale Hearing in the case of a Non-Resident Contract Counterparty, or at later date subject to the Court's availability in the case of a Resident Contract Counterparty.

**D. Sale Hearing**

The Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") on [●]**, at** [●] **_.m. (prevailing Eastern Time)**, at which hearing the Debtor may, in its discretion, seek approval of the Sale with the Successful Bidder.

Objections to the sale of the Assets to the Successful Bidder or Backup Bidder must be filed, comply with the Bankruptcy Rules and Local Rules, and be served so they are actually received by no later than **4:00 p.m. (prevailing Eastern Time) on October 19, 2026** (except for any objection that arises at the Auction) by the Notice Parties.

**E. Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtor but shall not become property of the Debtor's estate absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of (i) five (5) business days after the closing of the Sale with the Successful Bidder and (ii) the Outside Backup Date, except as otherwise provided herein. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

**F. Reservation of Rights**

The Debtor reserves its right to modify these Bid Procedures in its reasonable business judgment after consulting with the Consultation Parties in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) adjourning the Auction at

the Auction and/or adjourning the Sale Hearing in open court without further notice; (b) reopening the Auction to consider further Bids or Overbids; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent overbids, whether a non-conforming Bid constitutes a Qualified Bid); (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids (including the Stalking Horse Agreement), in all cases, subject to the Stalking Horse Agreement, the Bid Procedures, and the Bid Procedures Order; provided, however, that the Debtor may not modify any consent or consultation rights in favor of the Bond Trustee or the Consultation Parties or abridge the rights of the Bond Trustee to credit bid.

**Exhibit 2 to Bid Procedures Order**

**Non-Resident Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>PREMIUM EDGE, LLC,[1]<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 6:26-bk-04017-TPG |

**NOTICE OF BID PROCEDURES,**
**AUCTION, SALE HEARING AND DEADLINES RELATING**
**TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR**

**PLEASE TAKE NOTICE** that on June 24, 2026, the above-captioned Debtor and Debtor in possession (the "**Debtor**") filed a motion (the "**Bid Procedures and Sale Motion**")[2] with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").

The Debtor seeks to complete a sale (the "**Transaction**") of substantially all of its assets (the "**Assets**") to a prevailing bidder or bidders (the "**Successful Bidder**") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363 (the "**Auction**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], the Bankruptcy Court entered an order [Docket No. ●] (the "**Bid Procedures Order**") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "**Bid Procedures**"), which set the key dates and times related to the sale of the Debtor's Assets. **All interested bidders should carefully read the Bid Procedures**. To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtor must receive a Qualified Bid from interested bidders in writing, on or before **October 6, 2026 at 5:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtor (the "**Bid Deadline**"). To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (i) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschsuter@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309 (Attn: David Gordon

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

(dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com)), (ii) counsel for the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); and (iii) counsel for the Creditors' Committee, if one is appointed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, if the Debtor receives two or more Qualified Bids (including a Stalking Horse Bid) by the Bid Deadline, the Auction will be conducted on **October 15, 2026 at 10:00 a.m. (prevailing Eastern Time)** either virtually or at such physical location as identified by the Debtor after notice to all Qualified Bidders. The Auction may also be held at such other place or such other later date and time as may be designated by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, the Debtor has designated certain Assigned Contracts that may be assumed or assumed and assigned to the Successful Bidder. By **July 24, 2026 at 4:00 p.m. (prevailing Eastern Time)**, the Debtor shall file a notice setting forth the Debtor's calculation of the cure amount, if any, that would be owing to all nondebtor counterparties to such Assigned Contracts if the Debtor decided to assume or assume and assign such Assigned Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "**Cure Notice**"). Such Cure Notice shall be served upon all contract counterparties.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Cure Notice, the possible assignment of their Assigned Contract(s), or the proposed form of adequate assurance of future performance with respect to such contract or lease must file with the Bankruptcy Court and serve an objection (a "**Cure or Assignment Objection**") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on August 3, 2026**, by (a) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com); (b) counsel for the Stalking Horse Purchaser, if any, (c) counsel for the Creditors' Committee, if one is appointed, (d) the Office of the United States Trustee for Region 21 (Orlando Office), 400 West Washington Street, Suite 1100, Orlando, FL 32801, Attn: William Simonitsch (William.J.Simonitsch@usdoj.gov); (e) counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); and (f) the Clerk of the Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 (collectively, the "**Notice Parties**"). Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure Notice, or an objection to the possible assignment of that counterparty's Assigned Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the Assigned Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "**Sale Hearing**") before the Honorable Tiffany Geyer at the U.S. Bankruptcy Court for the Middle District of Florida, George C. Young Federal Courthouse, Courtroom A, 400 W. Washington Street Suite 5100 Orlando, FL 32801 on **October 22, 2026 at 1:15 p.m. (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that Objections to the sale of the Assets to the Successful Bidder must be filed and served so they are received no later than **4:00 p.m. (prevailing Eastern Time) on October 19, 2026**, by the Notice Parties.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtor encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures and the Bid Procedures Order may be obtained for a fee via PACER by visiting http://www.flmb.uscourts.gov/.

Dated: [●], 2026

**POLSINELLI PC**

*/s/ Michael L. Schuster*

Michael L. Schuster, Florida Bar No. 57119
315 S. Biscayne Blvd., Suite 400
Miami, FL 33131
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (720) 931-1188
mschuster@polsinelli.com

– and –

David E. Gordon (Admitted *Pro Hac Vice*)
Ashley D. Champion (Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000
dgordon@polsinelli.com
achampion@polsinelli.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit 3 to the Bid Procedures Order</u>**

**Resident Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>PREMIUM EDGE, LLC,[1]<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 6:26-bk-04017-TPG |

**NOTICE OF BID PROCEDURES,**
**AUCTION, SALE HEARING AND DEADLINES RELATING**
**TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTOR**

**PLEASE TAKE NOTICE** that on June 24, 2026, the above-captioned Debtor and Debtor in possession (the "**Debtor**") filed a motion (the "**Bid Procedures and Sale Motion**") [2] with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").

The Debtor seeks to complete a sale (the "**Transaction**") of substantially all of its assets (the "**Assets**") to a prevailing bidder or bidders (the "**Successful Bidder**") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363 (the "**Auction**").

**PLEASE TAKE FURTHER NOTICE** that, on [●], the Bankruptcy Court entered an order [Docket No. ●] (the "**Bid Procedures Order**") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "**Bid Procedures**"), which set the key dates and times related to the sale of the Debtor's Assets. **All interested bidders should carefully read the Bid Procedures**. To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures, the Debtor must receive a Qualified Bid from interested bidders in writing, on or before **October 6, 2026 at 5:00 p.m. (prevailing Eastern Time)** or such later date as may be agreed to by the Debtor (the "**Bid Deadline**"). To be considered, Qualified Bids must be sent to the following at or before the Bid Deadline: (i) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschsuter@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309 (Attn: David Gordon

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.

(dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com)), (ii) counsel for the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); and (iii) counsel for the Creditors' Committee, if one is appointed.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, if the Debtor receives two or more Qualified Bids (including a Stalking Horse Bid) by the Bid Deadline, the Auction will be conducted on **October 15, 2026 at 10:00 a.m. (prevailing Eastern Time)** either virtually or at such physical location as identified by the Debtor after notice to all Qualified Bidders. The Auction may also be held at such other place or such other later date and time as may be designated by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, the Debtor has designated certain Assigned Contracts that may be assumed or assumed and assigned to the Successful Bidder. By **October 19, 2026 at 4:00 p.m. (prevailing Eastern Time)**, the Debtor shall file a notice setting forth the Debtor's calculation of the cure amount, if any, that would be owing to all nondebtor counterparties to such Assigned Contracts if the Debtor decided to assume or assume and assign such Assigned Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "**Cure Notice**"). Such Cure Notice shall be served upon all contract counterparties.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Cure Notice, the possible assignment of their Assigned Contract(s), or the proposed form of adequate assurance of future performance with respect to such contract or lease must file with the Bankruptcy Court and serve an objection (a "**Cure or Assignment Objection**") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on November 9, 2026**, by (a) proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com); (b) counsel for the Stalking Horse Purchaser, if any, (c) counsel for the Creditors' Committee, if one is appointed, (d) the Office of the United States Trustee for Region 21 (Orlando Office), 400 West Washington Street, Suite 1100, Orlando, FL 32801, Attn: William Simonitsch (William.J.Simonitsch@usdoj.gov); (e) counsel to the Bond Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111 (Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) and Megan Preusker (MPreusker@mintz.com)); and (f) the Clerk of the Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 (collectively, the "**Notice Parties**"). Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure Notice, or an objection to the possible assignment of that counterparty's Assigned Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to assign the Assigned Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below).

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "**Sale Hearing**") before the Honorable Tiffany Geyer at the U.S. Bankruptcy Court for the Middle District of Florida, George C. Young Federal Courthouse, Courtroom A, 400 W. Washington Street Suite 5100 Orlando, FL 32801 on **[●] at [●] (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that Objections to the sale of the Assets to the Successful Bidder must be filed and served so they are received no later than **4:00 p.m. (prevailing Eastern Time) on October 19, 2026**, by the Notice Parties.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtor encourage parties in interest to review such documents in their entirety. A copy of the Bid Procedures and Sale Motion, the Bid Procedures and the Bid Procedures Order may be obtained for a fee via PACER by visiting http://www.flmb.uscourts.gov/.

Dated: [●], 2026

**POLSINELLI PC**

*/s/ Michael L. Schuster*

Michael L. Schuster, Florida Bar No. 57119
315 S. Biscayne Blvd., Suite 400
Miami, FL 33131
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (720) 931-1188
mschuster@polsinelli.com

– and –

David E. Gordon (Admitted *Pro Hac Vice*)
Ashley D. Champion (Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000
dgordon@polsinelli.com
achampion@polsinelli.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**<u>Exhibit 4 to Bid Procedures Order</u>**

**Non-Resident Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>PREMIUM EDGE, LLC,[1]<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 6:26-bk-04017-TPG |

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND POSSIBLE ASSIGNMENT TO THE STALKING HORSE OR SUCH OTHER SUCCESSFUL BIDDER AT AUCTION**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES MAY BE COUNTERPARTY TO ONE OR MORE EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTOR.[2]**

**PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR LEASE ON APPENDIX I HERETO**

**PLEASE TAKE NOTICE** that on June 24, 2026, the above-captioned debtor and debtor in possession (the "**Debtor**") filed a motion (the "**Bid Procedures and Sale Motion**") with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2026, the Bankruptcy Court entered an order [Docket No. ●] (the "**Bid Procedures Order**"), which (a) set key dates, times and procedures related to the Sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Assets**") pursuant to an auction (the "**Auction**") overseen by the Bankruptcy Court, which Auction is scheduled to occur on October 15, 2026, (b) authorized the Debtor to enter into a stalking horse asset purchase agreement (the "**Stalking Horse Agreement**") with a stalking horse purchaser (the "**Stalking Horse Purchaser**"), (c) established certain procedures relating to the Debtor's assumption and assignment of executory contracts and unexpired leases in connection with the

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

[2] This Notice is being sent to counterparties to executory contracts and unexpired leases. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

Sale, and (d) granted related relief.[3] Approval of the Sale to the Stalking Horse Purchaser or such other "Successful Bidder" (as defined in the Bid Procedures Order) after the results of the Auction and the Debtor's assumption and assignment of any executory contracts and unexpired leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court at **1:15 p.m.** (prevailing Eastern Time) on **October 22, 2026** (the "**Sale Hearing**"). The Sale Hearing may be adjourned by the Bankruptcy Court or the Debtor without further notice other than such adjournment announced in open court or a notice of adjournment filed on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order, the Debtor may assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Stalking Horse Purchaser or such other Successful Bidder after the outcome of the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has conducted a review of its books and records and has determined the cure amount for unpaid monetary obligations under such contract or lease is set forth in the right hand column on Appendix I (the "**Cure Amount**"). If you object to (a) the proposed assumption or disagree with the proposed Cure Amount or (b) object to the possible assignment of such executory contract(s) or unexpired lease(s) to the Stalking Horse Purchaser, **you must file an objection with the Bankruptcy Court no later than October 19, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") and serve such objection on the following parties**:

[3] To the extent there are any inconsistencies between the Bid Procedures Order and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

| **Counsel to the Debtor** | **Counsel to the Bond Trustee** |
| --- | --- |
| Polsinelli PC<br>Michael L. Schuster, Florida Bar No. 57119<br>315 S. Biscayne Blvd., Suite 400<br>Miami, FL 33131<br>1401 Lawrence Street, Suite 2300<br>Denver, CO 80202<br>Telephone: (720) 931-1188<br>mschuster@polsinelli.com<br><br>– and –<br><br>David E. Gordon (Admitted *Pro Hac Vice*)<br>Ashley D. Champion (Admitted *Pro Hac Vice*)<br>1201 West Peachtree Street NW<br>Suite 1100<br>Atlanta, GA 30309<br>Telephone: (404) 253-6000<br>dgordon@polsinelli.com<br>achampion@polsinelli.com | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com)<br>Megan Preusker (MPreusker@mintz.com) |
| **Clerk of the Bankruptcy Court** | **The United States Trustee** |
| United States Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 | Office of the United States Trustee for Region 21 (Orlando Office)<br>400 West Washington Street, Suite 1100, Orlando, FL 32801<br>Attn: William Simonitsch<br>William.J.Simonitsch@usdoj.gov |
| **Counsel to the Creditors' Committee** | **Counsel to the Stalking Horse Purchaser** |
| If appointed. | If designated. |

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be (a) forever barred from objecting to the Cure Amount, or provision of adequate assurance of future performance and from asserting any additional monetary or non-monetary cure condition or other amounts with respect to your contract(s) or lease(s), and the Debtor and the Stalking Horse Purchaser or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (b) deemed to have consented to the assumption or assumption and assignment, and (c) forever barred and estopped from asserting or claiming defaults of any character exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s).**

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Appendix I and otherwise do not object to the Debtor's assumption or assumption and assignment of your contract(s) and/or lease(s), you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available: (a) upon request from the proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com), and (b) for a fee via PACER by visiting http://www.flmb.uscourts.gov.

Dated: ___________, 2026

**POLSINELLI PC**

*/s/ Michael L. Schuster*

Michael L. Schuster, Florida Bar No. 57119
315 S. Biscayne Blvd., Suite 400
Miami, FL 33131
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (720) 931-1188
mschuster@polsinelli.com

– and –

David E. Gordon (Admitted *Pro Hac Vice*)
Ashley D. Champion (Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000
dgordon@polsinelli.com
achampion@polsinelli.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# APPENDIX I

| [Counterparty Name] | [Contract/Lease] | [Cure Amount] | [Proposed Assignee (if any)] |
|---|---|---|---|

**<u>Exhibit 5 to Bid Procedures Order</u>**

**Resident Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re:<br><br>PREMIUM EDGE, LLC,[1]<br><br>Debtor. | Chapter 11 Case<br><br>Case No. 6:26-bk-04017-TPG |

**NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES REGARDING CURE AMOUNTS AND POSSIBLE ASSIGNMENT TO THE STALKING HORSE PURCHASER OR SUCH OTHER SUCCESSFUL BIDDER AT AUCTION**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES MAY BE COUNTERPARTY TO ONE OR MORE EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES WITH THE DEBTOR.[2]**

**PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN AND (2) LOCATE THEIR NAME AND CONTRACT AND/OR LEASE ON APPENDIX I HERETO**

**PLEASE TAKE NOTICE** that on June 24, 2026, the above-captioned debtor and debtor in possession (the "**Debtor**") filed a motion (the "**Bid Procedures and Sale Motion**") with the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2026, the Bankruptcy Court entered an order [Docket No. ●] (the "**Bid Procedures Order**"), which, among other things: (a) set key dates, times and procedures related to the Sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Assets**") pursuant to an auction (the "**Auction**") overseen by the Bankruptcy Court, and (b) established certain procedures relating to the Debtor's assumption and assignment of executory contracts and unexpired leases in connection with the Sale.[3]

[1] The Debtor's mailing address is 901 Ponce De Leon Blvd., Suite 204, Coral Gables, FL 33134. The last four digits of the Debtor's federal tax identification number is 6571.

[2] This Notice is being sent to counterparties to executory contracts and unexpired leases. This Notice is not an admission by the Debtor that such contract or lease is executory or unexpired.

[3] To the extent there are any inconsistencies between the Bid Procedures Order and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures Order shall control.

**PLEASE TAKE FURTHER NOTICE** that the Auction concluded on [**DATE], 2026** and [--] (the "**Successful Bidder**") was named the successful bidder following the results of the Auction and the Debtor's assumption and assignment of any executory contracts and unexpired leases in connection therewith, is scheduled to take place at a hearing before the Bankruptcy Court at **1:15 p.m.** (prevailing Eastern Time) on **October 22, 2026** (the "**Sale Hearing**"). The Sale Hearing may be adjourned by the Bankruptcy Court or the Debtor without further notice other than such adjournment announced in open court or a notice of adjournment filed on the Bankruptcy Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order, the Debtor may assume and assign the executory contract(s) and/or unexpired lease(s) to which you may be a counterparty to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has conducted a review of its books and records and has determined the cure amount for unpaid monetary obligations under such contract or lease is set forth in the right hand column on Appendix I (the "**Cure Amount**"). If you object to (a) the proposed assumption or disagree with the proposed Cure Amount or (b) object to the possible assignment of such executory contract(s) or unexpired lease(s) to the Successful Bidder, **you must file an objection with the Bankruptcy Court no later than November 9, 2026 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") and serve such objection on the following parties**:

| **Counsel to the Debtor** | **Counsel to the Bond Trustee** |
|---|---|
| Polsinelli PC<br>Michael L. Schuster, Florida Bar No. 57119<br>315 S. Biscayne Blvd., Suite 400<br>Miami, FL 33131<br>1401 Lawrence Street, Suite 2300<br>Denver, CO 80202<br>Telephone: (720) 931-1188<br>mschuster@polsinelli.com<br><br>– and –<br><br>David E. Gordon (Admitted *Pro Hac Vice*)<br>Ashley D. Champion (Admitted *Pro Hac Vice*)<br>1201 West Peachtree Street NW<br>Suite 1100<br>Atlanta, GA 30309<br>Telephone: (404) 253-6000<br>dgordon@polsinelli.com<br>achampion@polsinelli.com | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn: Daniel Bleck (DSBleck@mintz.com), Poonam Patidar (PPatidar@mintz.com) Megan Preusker (MPreusker@mintz.com) |
| **Clerk of the Bankruptcy Court** | **The United States Trustee** |
| United States Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 | Office of the United States Trustee for Region 21 (Orlando Office)<br>400 West Washington Street, Suite 1100, Orlando, FL 32801<br>Attn: William Simonitsch<br>William.J.Simonitsch@usdoj.gov |
| **Counsel to the Creditors' Committee** | **Counsel to the Stalking Horse Purchaser** |
| If appointed. | If designated. |

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Amount or the assignment of your Executory Contract(s) or Unexpired Lease(s) to the Successful Bidder is filed by the Objection Deadline, **you will be (a) forever barred from objecting to the Cure Amount, or provision of adequate assurance of future performance and from asserting any additional monetary or non-monetary cure condition or other amounts with respect to your contract(s) or lease(s), and the Debtor and the Stalking Horse Purchaser or the Successful Bidder (as applicable) shall be entitled to rely solely upon the Cure Amount, (b) deemed to have consented to the assumption or assumption and assignment, and (c) forever barred and estopped from asserting or claiming defaults of any character exist, that conditions to assignment must be satisfied under such contract(s) and/or lease(s) or that there is any objection or defense to the assumption and assignment of such contract(s) and/or lease(s).**

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount indicated on Appendix I and otherwise do not object to the Debtor's assumption or assumption and assignment of your contract(s) and/or lease(s), you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the proposed Sale Order, are available: (a) upon request from the proposed counsel to the Debtor, Polsinelli PC, 315 S. Biscayne Blvd., Suite 400, Miami, FL 33131 (Attn: Michael L. Schuster) (mschuster@polsinelli.com) and Polsinelli PC, (1201 West Peachtree Street NW, Suite 1100, Atlanta, GA 30309, David Gordon (dgordon@polsinelli.com) and Ashley Champion (achampion@polsinelli.com), and (b) for a fee via PACER by visiting http://www.flmb.uscourts.gov.

Dated: ___________, 2026

**POLSINELLI PC**

*/s/ Michael L. Schuster*

Michael L. Schuster, Florida Bar No. 57119
315 S. Biscayne Blvd., Suite 400
Miami, FL 33131
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (720) 931-1188
mschuster@polsinelli.com

– and –

David E. Gordon (Admitted *Pro Hac Vice*)
Ashley D. Champion (Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Suite 1100
Atlanta, GA 30309
Telephone: (404) 253-6000
dgordon@polsinelli.com
achampion@polsinelli.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# APPENDIX I

| | | | |
|---|---|---|---|
| [Counterparty Name] | [Contract/Lease] | [Cure Amount] | [Proposed Assignee (if any)] |